## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANTHONY DAVID MARLAK, <br><br>     *Plaintiff*, <br><br>     v. <br><br> DEPARTMENT OF CORRECTION, STATE OF CONNECTICUT, ANGEL QUIROS, FAHD F. SYED, NDERIM BELICA, CAIR CT, INC., FARHAN MEMON, TARK AOUADI, and FAWAZ SYED, <br>    *Defendants*. | No. 3:21-cv-01399 (MPS) |

### RULING AND ORDER ON MOTIONS TO DISMISS

## I.   INTRODUCTION

The plaintiff, Anthony Marlak, filed this action challenging the decision by the Connecticut Department of Correction (the "DOC"), his former employer, to terminate his employment as a correctional officer.  Marlak's claims arise out of his termination in June of 2021 due to a meme he posted on his private Facebook page in January of 2017.  In his operative complaint, the Second Amended Complaint (ECF No. 47), Marlak asserts claims under Connecticut General Statutes § 31-51q, 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1985(3), the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12101 *et seq.*, as well as common law claims for civil assault, defamation, fraud, and intentional infliction of emotional distress ("IIED"), against the following defendants: the DOC, DOC Commissioner Angel Quiros, Captain of Correction Fahd Syed, Correctional Officer Fawaz Syed, and Correctional Officer Nderim Belica (collectively, the "DOC Defendants"), as well as CAIR CT, Inc. ("CAIR CT"), Farhan Memon, and Tark Aouadi  (collectively, the "CAIR Defendants").

1

The DOC Defendants and the CAIR Defendants have moved to dismiss all of the claims in Marlak's Second Amended Complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. As I explain more fully below, I GRANT in part and DENY in part the Defendants' motions to dismiss.

## II.     BACKGROUND

### A.     Factual Allegations[1]

Marlak, "a Christian [male] of European ancestry," ECF No. 47[2] ("Second Am. Compl."), at ¶ 11, and a United States Air Force veteran, *id.* at ¶ 12, who is "affected by" post-traumatic stress disorder as a result of his military service in Iraq, *id.* at ¶¶ 16, 128, was employed as a correctional officer by the DOC from July 2008 to June 2021, when he was terminated. *Id.* at ¶ 18. Aside from the period from February 2020 to June 2020 that he worked at Cheshire Correctional Institution ("Cheshire") in Cheshire, Connecticut, Marlak spent the entirety of his employment with the DOC at Garner Correctional Institution ("Garner"), located in Newtown, Connecticut. *Id.* at ¶ 18.

CAIR CT "is [the Connecticut] chapter of the Council on American-Islamic Relations." *Id.* at ¶ 19. Defendant Memon "is the president of CAIR CT, Inc., and a member of the Council on American-Islamic Relations." *Id.* at ¶ 27. In addition to being "a former captain of correction of the [S]tate of Connecticut," Defendant Fahd Syed "is, or was," *id.* at ¶ 28, on the board of

---

[1] I accept the following facts, taken from the Second Amended Complaint (ECF No. 47), as true for purposes of this motion. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). I also consider facts taken from the exhibits attached to the complaint, as well as documents incorporated by reference in the complaint and provided as exhibits to Defendants' respective motions to dismiss. *See, e.g.*, *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint.") (internal citations and quotation marks omitted); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court…may refer to evidence outside the pleadings.").
[2] I use ECF page numbers when citing documents in the record.

directors of CAIR CT, Inc., *id.* at ¶ 78. Defendant Fawaz Syed, "a correctional officer of the [S]tate of Connecticut…is the brother of Captain Fahd F. Syed and a member of CAIR CT, Inc." *Id.* at ¶ 33. Defendant Belica "is a former correctional officer of the [S]tate of Connecticut…[and] a member of CAIR CT, Inc." *Id.* at ¶ 34. Defendant Aouadi "is, or was, the executive director of CAIR CT, Inc." *Id.* at ¶ 38.

In January of 2017, *id.* at ¶ 55, Marlak maintained a private, invitation-only Facebook page under his first and middle name, "Anthony David," "that was not visible to the public." *Id.* at ¶ 60. Only Facebook users Marlak invited to view his page could see the content posted there. *Id.* at ¶ 60. Marlak's "Anthony David" page "did not disclose [his] full name and contained no reference to the United States Air Force, the [D]epartment of [C]orrection or the fact that he was a correctional officer." *Id.* at ¶ 61.

On or about January of 2017, Marlak engaged in a discussion with his invited Facebook "friends" on his private "Anthony David" Facebook page about their shared war experiences. *Id.* at ¶ 55. "The parties to this private conversation discussed Islamic beheading videos…" posted by "Jihadi John." *Id.* at ¶ 55. During this discussion, Marlak, as Anthony David, posted a "meme" depicting five men, apparently deceased, hanging from nooses tied around their necks. *Id.* at ¶ 55 (citing Pl. Ex. 1). Written across the photo was the text: "ISIS Wind Chimes." *Id.* "[T]he picture in the meme 'ISIS Wind Chimes'… was taken…by the Associated Press and documents the execution, by hanging, of five homosexuals by Muslims affiliated with the Islamic Republic of Iran in Mashhad, Iran in 2010." *Id.* at ¶ 56. "This image captured an historical incident of Muslim crimes against humanity perpetrated against homosexual victims. The image does not depict infidels perpetrating crimes against Muslims…the meme is not a

communication encouraging or condoning violence against Muslims." *Id.* at ¶ 57. "The commentary 'ISIS Wind Chimes' is a denunciation of Islamic terror…." *Id.* at ¶ 58.

According to the complaint, Defendant Fahd Syed, about two years later, downloaded a meme from the Internet that used the same image that appeared in Marlak's "ISIS Wind Chimes" meme but was captioned "*Islamic* Wind Chimes." *Id.* at ¶ 68 (emphasis added); (citing Pl. Ex. 2).[3] Marlak further alleges that in March 2019, Defendant Fahd Syed "instructed [Robert] Goodrich [the co-founder of the organization Radical Advocates for Cross-Cultural Education]" to submit the "Islamic Wind Chimes" meme to the Department of Correction in a complaint falsely representing it as the meme Marlak posted. *Id.* at ¶¶ 68, 70.[4] On "March 6, 2019, Deputy Warden Robert Hartnett and Attorney Nicole J. Anker," DOC employees, reviewed Goodrich's complaint and determined that, "as [Marlak's] meme could not be viewed by the public and because [Marlak] was not associated with the [DOC] on his Facebook profile, the meme did not violate [the Department's social media policy,] Administrative Directive 2.26." *Id.* at ¶ 71.

Following the conclusion of the investigation, Defendant Fahd Syed allegedly "persuaded" a Muslim inmate to file a complaint in which the inmate claimed falsely "to have overheard [Marlak] say he does not like Ramadan." *Id.* at ¶ 74. "Nothing came of" the inmate's complaint. *Id.* at ¶ 74. Fahd Syed then filed a complaint of his own that repeated the allegations

---

[3] Both the CAIR Defendants and the DOC Defendants attach to their briefs a screenshot of an "Anthony David" Facebook post that includes the caption "*Islamic* Wind Chimes" and the comment: 'Think I found the best meme on the planet!!' comment as exhibits. *See* ECF No. 28-5 (DOC Defendants' Ex. 4); ECF No. 30-7 at 4 (CAIR Defendants' Ex. E) (emphasis added). The Defendants argue that I may consider the screenshot because it is incorporated by reference in the Second Amended Complaint. While it is true that I may consider it, Marlak alleges that the "Islamic Wind Chimes" meme was fake, was not what he posted, and did not reflect his intent. *See* ECF No. 28-5 at 3 ¶ 10. It therefore would not be proper to consider the allegedly altered version of the meme – one that the plaintiff disavows in his complaint – as part of the plaintiff's allegations concerning his own actions, as Defendants appear to be urging.

[4] According to the Complaint, "[a] review of the plaintiff's Facebook account by the computer forensics unit of the department of correction determined that Goodrich could not have accessed the meme from plaintiff's Facebook account, as it was private." Second Am. Compl. at ¶ 70.

raised by Goodrich and included the same "Islamic Wind Chimes" meme.  *Id.* at ¶ 76.  Syed's complaint attributed the meme to Marlak, stated that the photo "depicted a terror attack upon Muslims" rather than "what it is: the genocide of homosexual victims by Muslims," and recommended that the matter "be further investigated by a formal investigation" and that "immediate action[] [] be taken in accordance [with] the Department of Correction['s] zero tolerance policy."  *Id.* at ¶ 76.[5]

In October of 2019, Defendant Fawaz Syed shared the "Islamic Wind Chimes" meme in a public post on Facebook.  *Id.* at ¶ 136.  Syed's post attributed the meme to Marlak and included the following comment from Syed: "This person is a C[O] that posted this and I am pretty sure this isn't Professional at all!"  *Id.* at ¶ 136; *see also id.* at ¶ 82.  Defendant Belica commented as follows under Syed's Facebook post: "It's funny you can work for the DOC and post pure bigotry on Facebook.  Let's see how well that works for you when you lose your job and don't have union protection in the private sector."  *Id.* at ¶ 83; *see also id.* at ¶ 138.[6]  Defendant Aouadi, posting under the "Waterbury Muslims" account, also participated in the discussion under Syed's post.  *Id.* at ¶ 83.

Marlak was transferred to Cheshire on February 1, 2020.  *See id.* at ¶ 18.  According to the complaint, prior to Marlak's transfer to Cheshire, Defendants CAIR CT, Fahd Syed, Fawaz Syed, Belica, Memon, and Aouadi learned of the impending transfer.  *Id.* at ¶¶ 87, 88.  Marlak alleges that Defendants Fahd Syed, Belica, CAIR CT, Inc., and Aouadi "discuss[ed] amongst themselves [] where the plaintiff could be located" and "plann[ed]" an encounter ahead of the

---

[5] The complaint does not contain allegations regarding the outcome of Syed's complaint.  *See id.* at ¶ 79.
[6] Marlak reported Belica's comment and "threats of violence" to the Department of Correction on October 28, 2019. *Id.* at ¶¶ 85, 88.  Belica was suspended for an unspecified period of time.  *Id.* at ¶ 86.

transfer.  *Id.* at ¶ 133.  In addition, Belica communicated the following messages to Marlak regarding the transfer:

> So your (sic) in my town now.  Maybe we should have a little chat about your feelings on Muslims
>
> ***
>
> We are waiting for you at Cheshire with open arms
>
> ***
>
> I do look forward to meeting you.  Let's see how well the steroids help…

*Id.* at ¶ 88.[7]

While at Cheshire, "on or about March 13, 2020…as [Defendant] Fawaz Syed…and [Marlak] were exiting the officers' mess hall together," Syed "slammed the door upon the plaintiff in a manner intended to strike him…"  *Id.* at ¶ 89; *see also id.* at ¶ 132.  This "provoked a confrontation with [Marlak]," about which Syed filed a report.  *Id.* at ¶ 89.  "Upon review of the security video recording of the incident, [a DOC employee determined] that 'review of the…video could not prove or disprove' [Defendant] Fawaz Syed's allegation."  *Id.* at ¶ 89.  Marlak was suspended for five days for language he directed at Fawaz Syed during the encounter.  *Id.* at ¶ 90.

"On or about January 8, 2021," Defendants CAIR CT and Memon sent a letter to Defendants Quiros and DOC stating, in part, that they had "received materials obtained through a Freedom of Information request showing that Anthony Marlak, a Corrections Officer within your Department, posted an Islamophobic picture on his Facebook Page of five men hanging from a rope by their necks with the caption 'Islamic Wind Chimes'…."  *Id.* at ¶ 140.  The letter further stated that "CO Marlak's Islamophobic Facebook posting, his subsequent altercations with

---

[7] The complaint does not indicate how these messages were communicated to the Plaintiff.

Muslim Correctional Officers, and his anti-Muslim / hate group adjacent self-descriptions are clear violations of the Department's policies regarding employee conduct.  It is incumbent on the Department of Correction[] to take immediate action to terminate CO Marlak's employment." *Id.* at ¶ 140.

On January 10, 2021, Defendants CAIR CT and Memon posted a video on YouTube titled "DOC Islamophobia."  *Id.* at ¶¶ 93, 142.  In the video, Memon introduces himself as "the chairman of CAIR Connecticut, the state chapter of the Coun[ci]l of American-Islamic Relations, the nation's largest Muslim civil rights group."  *Id.* at ¶ 142.  Memon then explains that CAIR CT has "received information based on a freedom of information request that showed that Officer Marlak has posted…to his Facebook account [pictures] of five men hanging from a rope [around] their necks with the caption 'Islamic Wind Chimes,'" and, further, that "Officer Marlak then appended a comment [to the photo] saying[,] 'I think I found the best meme on the planet.'" *Id.* at ¶ 142.   Memon represents in the video that the Facebook post, which he again attributes to Marlak, "is actually a violation of the [D]epartment's social media policy because it undermines the public's confidence in the DOC's commitment to racial equality and religious tolerance."  *Id.* at ¶ 142.  Memon also reports that CAIR CT has "sent a letter today to Angel Quiros, the interim [C]ommissioner of the [S]tate of Connecticut's [D]epartment of [C]orrection[], asking him to terminate the employment of Corrections Officer Anthony Marlak."  *Id.* at ¶ 142; *see also id.* at ¶ 95.  The video provides Defendant Quiros's "email address and phone number, and instructs viewers to contact Quiros and demand the plaintiff's immediate dismissal from state service." *Id.* at ¶ 95.  According to the allegations in the Complaint, certain unspecified defendants contacted news media outlets to direct them to the "DOC Islamophobia" YouTube video.  *Id.* at ¶ 93.

The following day, on January 11, 2021, the DOC provided the following notice to Marlak: "As a result of an inquiry into the events of an incident that occurred on January 11, 2021 you are being placed on No Inmate Contact (NIC) statute [*sic*] until further notice." *Id.* at ¶ 102.   "On January 13, 2021, the [D]epartment of [C]orrection placed [Marlak] on administrative leave, stating: 'You are being placed on Administrative Leave with pay effective Thursday, January 14, 2021 pending an investigation into a violation of your off-duty conduct that may subject you to disciplinary action up to and including dismissal from State service.'"  *Id.* at ¶ 103.

Marlak was terminated from his employment with the DOC on May 25, 2021.  *Id.* at ¶ 108.  The letter of termination read as follows:

> This is to inform you that you are being dismissed from State Service for just cause for violations of Administrative Directives 2.17, Employee Conduct and 2.26, Social Media. Specifically, an investigation found that your personal use of social media has undermined the public's confidence in your ability to function in your position. The type of speech posted threatens the safety of staff and inmates who are Muslim. Your actions violate the standard of conduct for correctional employees and will not be condoned or tolerated.

*Id.* at ¶ 108.

As a result of these experiences, Marlak "became physically distraught and sustained shock to his nervous system and suffered severe emotional distress...."  *Id.* at ¶ 153.

**B.    Procedural History**

After Marlak filed a one-count complaint in state court, Defendants removed the case to this Court under 28 U.S.C. § 1441.  *See* ECF No. 1.  Before responsive pleadings were filed, Marlak filed an Amended Complaint that added several new claims.  *See* ECF No. 14.  The CAIR and DOC Defendants filed motions to dismiss Marlak's Amended Complaint, ECF Nos. 28, 30, and the parties fully briefed those motions, *see* ECF Nos. 34-39.  I then, *sua sponte*, gave

Marlak a final opportunity to amend his complaint. ECF No. 45. After I granted Marlak's

motion to amend, ECF No. 51, with which he filed his Second Amended Complaint (ECF No.

47), Defendants filed motions to dismiss the Second Amended Complaint, ECF Nos. 49, 50. In

addition to filing responses to the motions to dismiss (ECF Nos. 54, 56), Marlak also filed

motions for leave to exceed the page limits for his memoranda in opposition (ECF Nos. 53, 54).

In response to Marlak's briefs in opposition, the CAIR Defendants and the DOC Defendants

filed their reply briefs. ECF Nos. 58, 59. Marlak subsequently filed a motion for leave to file a

sur-reply in response to the CAIR Defendants' reply brief (ECF No. 60), a proposed sur-reply

(ECF No. 61), and a notice regarding the DOC Defendants' motion to dismiss (ECF No. 62).

The motions for leave to file excess pages (ECF Nos. 53, 55) are GRANTED and the motion for

permission to file a sur-reply (ECF No. 60) is DENIED.

## III.     LEGAL STANDARD

A federal court must dismiss a complaint under Rule 12(b)(1) of the Rules of Civil

Procedure when it lacks subject matter jurisdiction and under Rule 12(b)(6) when the plaintiff

has failed to state a claim upon which relief can be granted. Fed R. Civ. P. 12(b)(1), 12(b)(6).

"When considering a [Rule 12(b)(1)] motion to dismiss for lack of subject matter jurisdiction or

[a Rule 12(b)(6) motion] for failure to state a cause of action, a court must accept as true all

material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d

129, 131 (2d Cir. 1998) (internal citation omitted). This tenet does not apply to legal

conclusions. *Wilson v. Dantas*, 746 F.3d 530, 535 (2d Cir. 2014). On a Rule 12(b)(1) motion, as

well as on a Rule 12(b)(6) motion, a court must draw all reasonable inferences in the nonmoving

party's favor.  *See, e.g.*, *McGinty v. State*, 193 F.3d 64, 68 (2d Cir. 1999) (discussing Rule

12(b)(1)); *Gonzalez v. Hasty*, 651 F.3d 318, 321 (2d Cir. 2011) (discussing Rule 12(b)(6)).[8]

"To survive a [12(b)(6)] motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009).  A claim is facially plausible "when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Iqbal*, 556 U.S. at 678 (internal citations omitted).

## IV.   DISCUSSION

Marlak's Second Amended Complaint sets forth nine causes of action: (1) wrongful

discipline under Conn. Gen. Stat. § 31-51q; (2) an Equal Protection violation under 42 U.S.C. §

1983; (3) discrimination and retaliation in violation of Title VII; (4) a violation of 42 U.S.C. §

1985(3); (5) retaliation and failure to accommodate in violation of the ADA; (6) common-law

civil assault, conspiracy to commit civil assault, and assisting, aiding, supporting, and abetting

civil assault; (7) defamation, libel, and slander; (8) fraud, deceit, and misrepresentation; and (9)

intentional infliction of emotional distress.  *See* Second Am. Compl.  I address each claim below.

---

[8] The Second Circuit has not always been clear on this point with respect to Rule 12(b)(1) motions, stating, at times, that on a Rule 12(b)(1) motion, the court should *not* draw inferences in the pleader's favor.  *Compare McGinty v. State*, 193 F.3d 64, 68 (2d Cir. 1999) (in reviewing dismissal under Rule 12(b)(1), 'we must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to plaintiffs') *with Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) ('[W]hen the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.') and *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004) ('On appeal of the district court's order on the motion to dismiss [under Rule 12(b)(1)], we must accept as true all material factual allegations in the complaint, but we are not to draw inferences from the complaint favorable to plaintiffs.').  In *Morrison v. Nat'l Australia Bank Ltd.,* 547 F.3d 167 (2d Cir. 2008), the court suggested that these different statements were reconcilable, although it did not explain how: "The court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff [on a Rule 12(b)(1) motion], 'but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'' *Id.* at 170.  In this ruling, I take as true the allegations in Marlak's complaint and draw all reasonable inferences in his favor.

### A.    Count Five: ADA

Marlak has conceded in his response to the DOC Defendants' Motion to Dismiss that he has failed to state a claim for retaliation and failure to accommodate in violation of the ADA (Count Five) because he failed to exhaust his administrative remedies prior to bringing that claim.  *See* ECF No. 54 at 32.  To assert an ADA claim, a plaintiff must exhaust "all available administrative remedies." *Hoffman v. Williamsville Sch. Dist.*, 443 Fed. Appx. 647, 649 (2d Cir. 2011) (citations omitted).  Because Marlak has conceded that he failed to include his ADA claims in his administrative complaint, I grant the DOC's motion to dismiss Count Five of the Second Amended Complaint and do not further address the merits of Marlak's ADA claims.

### B.    Count One: Conn. Gen. Stat. § 31-51q

Count One of the Second Amended Complaint alleges that the DOC Defendants (the DOC, Commissioner Quiros, Fahd Syed, Nderim Belica, and Fawaz Syed) violated Conn. Gen. Stat. § 31-51q, and that the CAIR Defendants (CAIR CT, Inc., Farhad Memon, and Tark Aouadi) and three of the DOC Defendants (Fahd Syed, Fawaz Syed, and Bellica) conspired to do so.  Second Am. Compl. at ¶¶ 109-111.  The Defendants have moved to dismiss Marlak's § 31-51q claims for failure to state a claim under Rule 12(b)(6).  *See, e.g.*, ECF No. 28-1 at 4-12 (DOC Defendants); ECF No. 30-1 at 13-18 (CAIR Defendants).

In support of his § 31-51q claim, Marlak contends that "[t]he actions of the [DOC Defendants] in terminating the plaintiff and in failing and refusing to reinstate him to full employment constitute a violation of General Statutes § 31-51q because such termination was done on account of the plaintiff's exercise of rights guaranteed [by the] [F]irst and [F]ourteenth [A]mendments to the United States [C]onstitution and the [C]onstitution of Connecticut, article first, §§ 3, 4 and 14."  Second Am. Compl. at ¶ 109.  "An employer violates Conn. Gen. Stat. §

11

31-51q when it discharges an employee 'on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer.'" *Blue v. City of New Haven*, 2019 WL 399904, at *8 (D. Conn. 2019) (quoting Conn. Gen. Stat. § 31-51q).

DOC Defendants first assert that only an employer – not any of the individual defendants – may be held liable under § 31-51q. *See* ECF No. 28-1 at 9-10 (citing *Mercer v. Schriro*, 337 F. Supp. 3d 109, 140-41 (2018)). "[D]espite 'a dearth of appellate authority on this direct issue,' the Connecticut Superior Courts have held that '[a] cause of action founded upon § 31-51q of the General Statutes ... lie[s] only against a plaintiff's employer and not directly against an employer's agent.'" *Mercer v. Schriro*, 337 F. Supp. 3d 109, 141 (D. Conn. 2018) (quoting *Maisano v. Congregation Or Shalom*, 2009 WL 415696, at *3 (Conn. Super. Ct. Jan. 26, 2009)); *see also, e.g., Lenox v. Town of N. Branford*, 2009 WL 1099118, at *2 (D. Conn. 2009) ("[T]his Court has interpreted [§ 31-51q] as limiting liability only to the state, its instrumentalities or its political subdivisions. Further, recent case law has rejected imposing individual liability pursuant to § 31-51 q. Accordingly, the Court will dismiss the § 31-51q claims against the Individual Defendants.") (internal citations omitted). Marlak does not contend otherwise—that is, he does not argue that the definition of "employer" within the meaning of § 31-51q is more expansive than Defendants or other Connecticut courts have understood it to be—or address this point at all in his brief in opposition, and appears to have abandoned his § 31-51q claim against the individual defendants in favor of advancing a conspiracy claim under § 31-51q against those defendants. *See* ECF No. 54 at 14-25. Absent any argument or authority to the contrary, I agree

with the DOC Defendants and the apparent consensus of Connecticut trial courts and this District.  Therefore, I dismiss Marlak's § 31-51q claim as to Defendants Quiros, Fahd Syed, Belica, and Fawaz Syed.

As for the claim of conspiracy to violate § 31-51q, Count One alleges that the CAIR Defendants and three of the DOC Defendants "engaged in a civil conspiracy to procure a violation [of] General Statutes § 31-51q in that they, acting in combination, by means of fraud, deceit, misrepresentation, threats, assault, defamation and disclosure and publication of confidential [DOC] documents and proceedings, procured a violation of General Statutes § 31-51q."  ECF No. 47 at ¶ 110.  Defendants seek dismissal of this claim for two reasons: the DOC Defendants contend that such a claim is "not authorized by the statute," ECF No. 50-1 at 6, while the CAIR Defendants argue that the conspiracy claim must fail because Marlak has failed to sufficiently allege the underlying cause of action—a violation of § 31-51q.  *See* ECF No. 30-1 at 13-16.  I will address each of these arguments in turn.

Nowhere in his brief does Marlak point to authority recognizing a claim of conspiracy to violate § 31-51q.  In the absence of such authority, and in the absence of a clear directive from the statutory text, which plainly targets free speech retaliation only by "employer[s]," Conn. Gen. Stat. § 31-51q(b),  *see, e.g.*, *Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin*, 135 F.3d 837, 841 (2d Cir. 1998) (rejecting cause of action for conspiracy to violate securities laws where conspiracy liability not explicitly provided for by statute), Marlak's conspiracy cause of action must be dismissed.

Even assuming a cause of action for conspiracy to violate § 31-51q exists, however, I find that the allegations in Marlak's complaint are insufficient to state a claim "because there are no factual allegations that state or suggest that the CAIR Defendants conspired with the

13

Department of Correction to discharge the Plaintiff because of the meme he posted."  ECF No. 30-1 at 16.  The Complaint alleges merely that CAIR CT and Memon filed a complaint with the DOC calling for Marlak's termination; there are no factual allegations suggestive of a conspiracy between CAIR or Memon and those at the DOC who decided to fire Marlak.  Nor does the Second Amended Complaint plausibly allege that Fahd Syed, Fawaz Syed, and/or Belica conspired with the DOC to violate § 31-51q.  There are no factual allegations suggesting that those at the DOC responsible for firing Marlak reached some agreement with the Syeds or Belica on this score.  The allegations in Marlak's complaint regarding the alleged conspiracy are conclusory and insufficient.  For this reason, too, Marlak's conspiracy claim must be dismissed.

Turning to the remainder of Count One—the § 31-51q claim against the DOC—I conclude that Marlak has stated a claim for relief.  "Section 31-51q protects an employee from retaliatory discharge due to that employee's exercise of certain enumerated rights, including, inter alia, the right to freedom of expression as guaranteed by the first amendment to the United States constitution, and article first, § 4, of the Connecticut constitution."  *Daley v. Aetna Life & Cas. Co.*, 249 Conn. 766, 778 (1999).  To state a claim under Conn. Gen. Stat. § 31-51q, a plaintiff must allege facts suggesting that "(1) he was exercising rights protected by the First Amendment to the United States Constitution (or an equivalent provision of the Connecticut Constitution); (2) he was disciplined or terminated on account of his exercise of such rights; and (3) his exercise of his First Amendment (or equivalent state constitutional rights) did not substantially or materially interfere with his bona fide job performance or with his working relationship with his employer."  *Fasoli v. City of Stamford*, 64 F. Supp. 3d 285, 295 (D. Conn. 2014).[9]  Defendant DOC addresses only the third requirement, contending that Marlak has not

---

[9] *But see Blue v. City of New Haven*, 2019 WL 399904, at *9 (D. Conn. 2019) ("In the absence of binding precedent, state and federal trial courts have split on whether the plaintiff or the defendant bears the burden [of proving

only failed to plead that his speech did not substantially or materially disrupt his working relationship or job performance, but also that his allegations affirmatively plead that his speech did, in fact, interfere with his job or working relationship.  ECF No. 28-1 at 5-9.  To this point, the DOC adds that "[t]he vehemence and extreme degree of [Marlak's] anti-Muslim bias, as expressed and detailed throughout the [Second] Amended Complaint, makes readily apparent why DOC could not, consistent with its own policies, safely allow Plaintiff to continue as a Correctional Officer charged with supervising Muslim inmates and working closely alongside Muslim colleagues."  *Id.* at 5.

Regardless of whether the substantial or material interference requirement is an element of the claim or an affirmative defense, *see supra* note 9, Marlak has sufficiently pled this requirement.  Marlak alleges that, following an investigation into his private Facebook activity based on Goodrich's complaint, which resulted in the DOC's determination that "the meme did not violate" the Department's social media policy, Second Am. Compl. at ¶ 71, he remained employed with the DOC at Garner for over two more years—from March 6, 2019 when the investigation concluded until June 8, 2021 when he was terminated, *see id.* at ¶¶ 18, 71.  Further, the facts alleged suggest that it was not until CAIR sent a letter to Commissioner Quiros and posted the YouTube video in January 2021 that the DOC determined that the meme attributed to Marlak posed a problem.  That meme, however, was not his, according to the allegations, but a false version of it.  According to the complaint, Marlak himself did not do anything that interfered with his work or his relationship with his employer.  Because Marlak has set forth

---

substantial interference].").  As noted in the text, I conclude that Marlak has adequately pled substantial interference, and, therefore, need not conclusively resolve whether this part of the statute is an element of the claim or an affirmative defense.

facts that, taken as true, demonstrate a lack of substantial interference under § 31-51q, I deny the DOC's motion to dismiss Count One.

## C.     Count Two: Equal Protection Violation Under 42 U.S.C. § 1983

Count Two of the Second Amended Complaint asserts an Equal Protection claim under 42 U.S.C. § 1983 against the DOC and Commissioner Quiros in his official capacity.  Second Am. Compl. at ¶¶ 40, 118-119.  Specifically, Marlak alleges that the DOC and Quiros violated the Equal Protection Clause of the Fourteenth Amendment by unlawfully discriminating against him on the basis of "his race, religion and political views."  *Id.* at ¶ 118.  Marlak seeks both monetary and declaratory relief for the alleged violations.  *See* Second Am. Compl. at 34.

DOC Defendants first argue that Count Two is barred by the Eleventh Amendment because Marlak is seeking money damages.  *See* ECF No. 28-1 at 16-17.  The Eleventh Amendment bars the "Judicial power of the United States" from "extend[ing] to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. Amend. XI.  "Although by its terms the Amendment applies only to suits against a State by citizens of another State, [the Supreme Court has] extended the Amendment's applicability to suits by citizens against their own States."  *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001).  "Generally, a suit for recovery of money may not be maintained against the state itself, or against any agency or department of the state, unless the state has waived its sovereign immunity under the Eleventh Amendment."  *Auguste v. Dep't of Corr.*, 424 F. Supp. 2d 363, 367 (D. Conn. 2006).   "[T]he Department of Correction[] is an arm of the State of Connecticut… As an arm of the state, the Department enjoys the same Eleventh Amendment immunity against suit in federal court…"  *Vaden v. Connecticut*, 557 F. Supp. 2d 279, 288 (D. Conn. 2008).  There are two

exceptions to a State's Eleventh Amendment immunity.  First, "[a] sovereign's immunity may be waived."  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984).  In other words, "a State may consent to suit against it in federal court."  *Id.*  Second, Congress may abrogate "States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority."  *Garrett*, 531 U.S. at 363 (internal quotation marks and alteration omitted).  Marlak does not contend that there has been a waiver or abrogation.

As for Eleventh Amendment immunity for state officials like Commissioner Quiros, sued here in his official capacity only, the Supreme Court has held that "[s]uits against state officials in their official capacity [] should be treated as suits against the State."  *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 ("But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office…As such, it is no different from a suit against the State itself.").  Accordingly, Marlak's § 1983 claim against the DOC, an arm of the State, and his claim against Commissioner Quiros for money damages, which I must treat as a suit against the State, must be dismissed.

There is an exception, however, to the bar against official capacity suits against state officials: "under the *Ex parte Young* exception, the Eleventh Amendment does not bar a suit for prospective relief against an individual acting in his official capacity…to end an ongoing violation of a federal law."  *Williams v. Marinelli*, 987 F.3d 188, 197 n.13 (2d Cir. 2021) (internal citations and quotation marks omitted).  "In determining whether a litigant's claim falls under the *Ex parte Young* exception, [a court asks] two questions: whether the complaint (1) alleges an ongoing violation of federal law; and (2) seeks relief properly characterized as

prospective." *Vega v. Semple*, 963 F.3d 259, 281 (2d Cir. 2020).  In addition to money damages, Marlak seeks "[r]einstatement as a correctional officer with the [D]epartment of [C]orrections." Second Am. Compl. at 34.  As defendants recognize, this is a request for "prospective injunctive relief," ECF No. 28-1 at 17.  In the Second Circuit, "claims for reinstatement to previous employment satisfy the *Ex parte Young* exception to the Eleventh Amendment's sovereign immunity bar." *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 96 (2d Cir. 2007).  Therefore, Marlak has satisfied the second prong of the *Ex parte Young* analysis.

As for the first prong—whether the complaint alleges an ongoing violation of federal law—the question is whether Marlak's Complaint has sufficiently alleged that Quiros, "the state officer against whom [his] suit is brought[,] '[has] some connection with the enforcement of the act' that is in continued violation of federal law." *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372–73 (2d Cir. 2005) (quoting *Ex parte Young*, 209 U.S. 123, 154 (1908)).  The Second Circuit has instructed that "[w]hen a court reviews the legal merits of a claim for purposes of *Ex parte Young,* it reviews only whether a violation of federal law is *alleged*…[Accordingly,] only frivolous and insubstantial claims will not survive its scrutiny." *In re Deposit Ins. Agency*, 482 F.3d 612, 623 (2d Cir. 2007) (emphasis in original).  So I turn next to whether Marlak has alleged a continuing violation of the Equal Protection Clause.

The Equal Protection Clause of the Fourteenth Amendment "requires that the government treat all similarly situated people alike." *Harlen Associates v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir.2001). "This clause prohibits both prototypical discrimination based on membership in a protected class and class of one discrimination where the plaintiff alleges that he has been intentionally treated differently from others similarly situated without a rational basis for the difference in treatment." *Garanin v. New York City Hous. Pres. & Dev.*, 673 F. App'x 122, 124

(2d Cir. 2016) (internal quotation marks omitted).  It also protects against "selective

enforcement."  *See Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019).  For any equal

protection claim,

> [P]roof of discriminatory intent is required to show a violation of the Equal Protection
> Clause.  Because neither a state nor a state official in his official capacity is a "person"
> within the meaning of § 1983, the requisite discriminatory intent must be held by the state
> official in his individual capacity.  Thus, liability for an Equal Protection Clause violation
> under § 1983 requires personal involvement by a defendant, who must act with
> discriminatory purpose.

*Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012) (internal citations omitted).

In support of his equal protection claim, Marlak contends that "he was singled out

as a Christian, as a white man, as a conservative Republican, and as a retired member of the

United States armed forces, all of which are protected classes."  ECF No. 54 at 26 (internal

citations omitted).[10]  Marlak is correct that race and religion are considered suspect

classifications.  *See, e.g.*, *Regents of Univ. of California v. Bakke*, 438 U.S. 265, 299 (1978)

("When [classifications] touch upon an individual's race or ethnic background, he is entitled to a

judicial determination that the burden he is asked to bear on that basis is precisely tailored to

serve a compelling governmental interest."); 16B Am. Jur. 2d Const. Law § 854 (2023) ("The

highest level of scrutiny under the Equal Protection Clause, strict scrutiny, applies to suspect

classes, such as classifications based on race, religion, and national origin.") (citing cases). His

political affiliation and status as a veteran, however, are not.  *See, e.g., Diederich v. Cnty. of*

*Rockland*, 999 F. Supp. 568, 572 (S.D.N.Y.), *aff'd*, 166 F.3d 1200 (2d Cir. 1998) ("Because the

right to be free from political discharge involves neither a suspect class nor a fundamental right,

---

[10] Marlak's arguments as to the theory of his equal protection claim have vacillated.  Specifically, although Marlak
appeared to disclaim any class-based equal protection claim in his initial brief, *see* ECF No. 35 at 29, the quoted
language from his second brief suggests that he *is* asserting such a claim.  Further, Marlak expressly rejects the
notion that he is bringing his equal protection claim under a "class of one" theory.  *See* ECF No. 54 at 26.  I address
the claim as one alleging class-based discrimination.

defendants' decision should be judged under the rational basis standard."); 16B Am. Jur. 2d

Const. Law § 860 (2023) (listing "status as veterans" as among classifications not to be

considered suspect).[11]

Commissioner Quiros does not argue that Marlak has failed to plead his personal

involvement in the termination, but contends instead that Marlak has not adequately pled an

equal protection claim because Fahd Syed—the comparator Marlak identifies in his complaint—

is an inadequate comparator and there are no factual allegations that Quiros was aware of Syed's

extracurricular political activities.  *See* ECF No. 28-1 at 17-18.  According to the allegations in

Marlak's complaint, Fahd Syed, a former correctional officer with the DOC, is or was a "leader

of the Black Lives Matter movement and the Antifa…movement," Second Am. Compl. at ¶ 28,

was interviewed by a local news channel about Christopher Columbus, who Syed described in

the interview as an "oppressor" and a "hateful person," *id.* at ¶ 31, participated in a "Black Lives

Matter riot that blocked Interstate 84 on or about Sunday, May 31, 2020, in Waterbury,

Connecticut," *id.*, and has posted photos of himself participating in these demonstrations,

including a photo of himself and his son at a Black Lives Matter demonstration, on his Facebook

page, *id.*  Marlak also alleges that Fahd Syed "zealously advocated [for] the Black Lives Matter

and Antifa communist movements" "on local television and [in] newspapers."  *Id.* at ¶ 116.

Marlak alleges that "[t]he [D]epartment of [C]orrection and Commissioner Quiros were aware

[of] and condoned" Syed's "membership, leadership and participation in the Black Lives Matter

and Antifa communist movements."  *Id.*  While this allegation concerning Quiros's awareness is

somewhat conclusory, it is reasonable to infer from the factual allegations about the public

---

[11] To the extent Marlak is also asserting gender-based discrimination, there are no allegations in his complaint
pertaining to discriminatory treatment based on gender.  I therefore will not consider any argument that he was
discriminated against for being male.

nature of Syed's political activities that Quiros was aware of some of them, and at this stage I must draw all reasonable inferences in Marlak's favor.  And while there are significant differences between Marlak and Syed, there are sufficient allegations in the Complaint to allow Marlak to proceed with his equal protection claim on the theory that Quiros responded to Marlak's extracurricular activity differently than he did to Syed's.  *Hu v. City of New York*, 927 F.3d 81, 97 (2d Cir. 2019) ("The question of whether parties are similarly situated is generally a fact-intensive inquiry…[I]t is precisely in light of the inquiry's fact-intensive nature that we have cautioned against deciding whether two comparators are similarly situated on a motion to dismiss.") (internal quotation marks, citations, and alteration omitted).  Accordingly, the DOC's motion to dismiss this Count as to Defendant Quiros is denied.

## D.     Count Three: Title VII Discrimination and Retaliation

Count Three of the Second Amended Complaint alleges that the DOC discriminated against Marlak on the basis of his race, color, religion, and national origin, and retaliated against him in response to his complaint filed against Defendant Belica, all in violation of Title VII of the Civil Rights Act.  ECF No. 47 at ¶¶ 120-124.

"It is well established that Title VII requires a plaintiff to exhaust administrative remedies before filing suit in federal court."  *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 384 (2d Cir. 2015).  Administrative exhaustion is "a precondition to bringing [Title VII] claims in federal court."  *Id.* (internal quotation marks omitted).  Here, the DOC argues, Marlak "relies upon [his] October 6, 2021 EEOC right to sue letter [Ex. 3, Doc. 28-4] as the basis of his administrative exhaustion. (Second Am. Compl. ¶ 124.)  But [Marlak's] first CHRO complaint [Ex. 2, Doc. 28-2], to which that right to sue letter pertained, did not allege a violation of Title VII and did not make any claim based on [his] race, color, religion and national origin."  ECF No. 50-1 at 10.  I

21

agree.  The CHRO Complaint dated March 30, 2021, upon which the October 6, 2021 right-to-sue letter was issued, alleges discrimination based on mental disability, physical disability, and veteran status, ECF No. 28-2 at 1, and asserts an ADA violation, not a Title VII claim, *id.* at 2, 5.[12]  Because Marlak failed to exhaust his administrative remedies as to his Title VII discrimination and retaliation claims based on his race, color, religion, and national origin, I must dismiss Count Three.

**E.      Count Four: 42 U.S.C. § 1985(3)**

In Count Four of his Second Amended Complaint, Marlak alleges that Defendants "Fahd F. Syed, Correctional Officer Fawaz Syed, [Nderim] Belica, CAIR CT, Inc., Farhan Memon and Tark Richard Aouadi, Esq., conspired by means of force, intimidation and threats, for the purpose of depriving the plaintiff of the equal protection of the laws, in violation of 42 U.S.C. § 1985(3)."  ECF No. 47 at ¶ 126.  The Deprivation Clause of § 1985 prohibits two or more persons from conspiring "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3).  "To state a civil rights conspiracy under § 1985(3), a plaintiff must allege: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."  *Britt v. Garcia*, 457 F.3d 264, 269 n.4 (2d Cir. 2006).  "In order to maintain an action under Section 1985, a plaintiff 'must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the

---

[12] On October 30, 2022, Marlak filed another case in this Court, *Marlak v. Correction*, Dkt. No. 3:22-cv-01365-MPS, presumably to enable him to proceed with a Title VII claim.

unlawful end.'" *Allen v. Antal*, 665 F. App'x 9, 14 (2d Cir. 2016) (quoting *Webb v. Goord*, 340

F.3d 105, 110 (2d Cir. 2003)).  "'A complaint containing only conclusory, vague, or general

allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion

to dismiss.'" *Id.* at 14-15 (quoting *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993)).

Though Marlak has been presented with two opportunities to amend his complaint, the

allegations in his Second Amended Complaint pertaining to this Count are too spare and

conclusory to state a claim under § 1985(3).  The Second Amended Complaint provides no

factual basis for a meeting of the minds or any facts suggesting that the CAIR Defendants and

the DOC Defendants entered into an agreement of any kind.  Without such allegations, Marlak's

§ 1985(3) claim cannot survive a motion to dismiss.  I therefore grant the motion to dismiss

Count Four.

**F.     Count Six: Civil Assault**

Count Six of the Second Amended Complaint raises a civil assault claim against

Defendant Fawaz Syed, ECF No. 47 at ¶ 132; a civil conspiracy to commit civil assault claim

against Defendants Fahd Syed, Belica, CAIR CT and Aouadi, ECF No. 47 at ¶ 133; and a claim

for assisting, aiding, supporting and abetting civil assault against Defendants Fahd Syed, Belica,

CAIR CT, and Aouadi, ECF No. 47 at ¶ 134.

Under Connecticut law, "[a] civil assault requires: (1) that the defendant intended to

cause a harmful or offensive contact, or an imminent apprehension of such contact, with another

person, and (2) that the other person was put in imminent apprehension as a result." *Doe v. City*

*of Waterbury*, 453 F. Supp. 2d 537, 552 (D. Conn. 2006).  Marlak alleges that on March 13,

2020, defendant Fawaz Syed slammed the mess hall door at Cheshire on Marlak "in a manner

intended to strike him, causing imminent apprehension of harmful or offensive contact to the

plaintiff."  Second Am. Compl. at ¶ 89.  Defendant Syed's argument that "[t]here is no allegation

that Plaintiff was actually hit by the door," ECF No, 28-1 at 24, is inapposite, as there is no

requirement that contact be made—only the "apprehension" of contact must be alleged.  *Maselli*

*v. Reg'l Sch. Dist. No. 10*, 198 Conn. App. 643, 660, 235 A.3d 599, 613 (2020).  Because Marlak

has adequately pleaded the elements for a civil assault claim against Defendant Syed, Syed's

motion to dismiss this claim must be denied.

        "A civil conspiracy is: (1) a combination of two or more persons; (2) to perform a

criminal or unlawful act or a lawful act by criminal or unlawful means; (3) an act taken by one or

more of the conspirators pursuant to the scheme and in furtherance of the object; and (4) which

results in damage to the plaintiff."  *Doe*, 453 F. Supp. at 552.    To state a claim for aiding and

abetting, a plaintiff must allege that: "(1) the party whom the defendant aids must perform a

wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part

of an overall illegal or tortious activity at the time that he provides the assistance; (3) the

defendant must knowingly and substantially assist the principal violation."  *Efthimiou v. Smith*,

268 Conn. 499, 505, 846 A.2d 222, 226 (2004) (internal quotation marks omitted).  "As with

civil conspiracy, plaintiffs alleging aiding and abetting liability must prove an underlying tort

that defendants allegedly facilitated…."  *Master-Halco, Inc. v. Scillia Dowling & Natarelli, LLC*,

739 F. Supp. 2d 109, 121 (D. Conn. 2010). "[M]ere association with a tortfeasor, or even

knowledge of wrongdoing, without more, is insufficient to support a civil conspiracy [or aiding

and abetting] claim."  *MasterHalco, Inc. v. Scillia, Dowling & Natarelli, LLC*, 739 F.Supp.2d

104, 107 (D.Conn.2010).

        In support of his civil conspiracy claim, Marlak alleges only that "Fahd F. Syed, Belica,

CAIR CT, Inc., and Aouadi, engaged in a civil conspiracy to commit a civil assault upon the

plaintiff in that they, acting in combination, by premeditated planning, discussion amongst themselves of where the plaintiff could be located…" while at Cheshire.  Second Am. Compl. at ¶ 133.  The allegations supporting his aiding and abetting theory are equally conclusory.  *See id.* at ¶ 134. Because Marlak has failed to adequately allege conspiracy or aiding and abetting liability, I must grant the motions to dismiss as to those claims.[13]

## G.   Count Seven: Defamation, Libel, and Slander

"Defamation is comprised of the torts of libel and slander: slander is oral defamation and libel is written defamation.  With each publication of a defamatory statement by a defendant, a new cause of action arises." *Skakel v. Grace*, 5 F. Supp. 3d 199, 206 (D. Conn. 2014) (internal citations omitted).  To state a claim for defamation under Connecticut law, a plaintiff must plead facts demonstrating that "(1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Cweklinsky v. Mobil Chem. Co.*, 267 Conn. 210, 217 (2004).

Count Seven of the Second Amended Complaint alleges that Defendants Fawaz Syed, Belica, CAIR CT, and Memon are liable for libel and slander for posting publicly on Facebook posts attributing the "Islamic Wind Chimes" meme to Marlak in 2019 (Fawaz Syed), publishing a post on Facebook in October 2019 suggesting that Marlak used steroids (Belica), sending a letter to Commissioner Quiros in January of 2021 regarding the "Islamic Wind Chimes" meme (CAIR CT and Memon), and posting a related video on YouTube on January 10, 2021 (CAIR CT and Memon).  *See* Second Am. Compl. ¶¶ 135-44.  Marlak further alleges that "[s]uch untrue postings, letter and video, considered separately and collectively, tend to injure the reputation of

---

[13] As all claims against defendant Aouadi have now been dismissed, I decline to address his personal jurisdiction arguments.  *See, e.g.*, ECF No. 30-1 at 11-12.

the plaintiff in his profession and exposed the plaintiff to public hatred, contempt, ridicule and caused financial injury, and impeach the plaintiff's honesty, integrity and reputation." *Id.* at ¶ 144.

DOC Defendants Syed and Belica contend that Marlak's defamation claims "must be dismissed as untimely, as they are outside the two-year statute of limitations under Conn. Gen. Stat. § 52-597." ECF No. 28-1 at 4; *see also* ECF No. 50-1 at 15.[14] Conn. Gen. Stat. § 52-597 provides that "[n]o action for libel or slander shall be brought but within two years from the date of the act complained of." "The statute of limitations for a defamation claim begins on the date of publication, [and] a new cause of action arises with each publication." *Id.* at 224." *Lafferty v. Jones*, 2018 WL 5793791, at *3 (D. Conn. 2018). Here, Marlak's defamation claims against Defendants Belica and Fawaz Syed, based on their October 2019 Facebook posts, were brought for the first time in his First Amended Complaint filed on November 17, 2021. *Compare* ECF No. 1 *with* ECF No. 14. This is beyond the two-year statute of limitations imposed by Conn. Gen. Stat. § 52-597.

Marlak does not dispute that his claims against Fawaz Syed and Belica fall outside the two-year period, but contends that the statute of limitations was tolled under the "continuing course of conduct" doctrine. "To support a finding of a 'continuing course of conduct' that may toll the statute of limitations [,]there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto." *Fichera v. Mine Hill Corp.*, 207 Conn. 204, 209 (1988). "Where [the Connecticut Supreme Court has] upheld a finding that a duty continued to exist after the cessation of the 'act or omission' relied upon, there has been

---

[14] "While a statute of limitations defense is not ordinarily considered on a motion to dismiss, it is appropriate if the dates in question are undisputed." *Pinkston v. Connecticut*, 2009 WL 2852907, at *2 (D. Conn. 2009). Because the relevant dates are set forth in Marlak's complaint, I may address the Defendants' statute of limitations defense at this stage.

evidence of…some later wrongful conduct of a defendant related to the prior act." *Id.*
According to Marlak, the statute of limitations must be tolled under the continuing course of
conduct doctrine because "the final act of the [] defendants' conspiracy to violate [his]
constitutional rights…occurred on January 10, 2021, when CAIR CT, Inc., and Memon
published" the YouTube video.  ECF No. 54 at 37.  But nowhere in the Second Amended
Complaint does Marlak allege that either Fawaz Syed or Belica was involved in the creation,
publication, or distribution of the video.  And there are simply not enough allegations in
Marlak's Complaint to suggest that they conspired with Memon in connection with the video—
or in any other way.  His allegations thus do not suggest a continuing course conduct related to
defamation on the part of Fawaz Syed or Belica.  Therefore, Count Seven must be dismissed as
to defendants Fawaz Syed and Belica as untimely.

Turning next to the merits of Marlak's defamation claim, I find, contrary to Defendants'
assertions, *see* ECF No. 30-1 at 27, that Marlak has pleaded falsity with the requisite specificity
by alleging that the "Islamic Wind Chimes" meme Defendants repeatedly attributed to him was
not the meme that he posted on his private Facebook page.  Defendants' second argument—that
"there are no facts alleged by the Plaintiff, nor is it reasonable to infer, that the text 'Islamic
Wind Chimes' is what caused harm to the Plaintiff's reputation and not the photograph of five
Middle Eastern men hanging from nooses…," ECF No. 30-1 at 28—misses the point.  Under
Connecticut law, "[t]o prevail on a common-law defamation claim, a plaintiff must prove that the
defendant published false statements about h[im] that caused pecuniary harm..."  *Daley v. Aetna
Life & Cas. Co.*, 249 Conn. 766, 795–96, 734 A.2d 112, 129 (1999) (internal citations omitted).
Marlak has alleged that the defendants have falsely stated that he posted the disturbing image
with text suggesting that he endorsed the action of hanging the individuals because they were

27

Muslim, when in fact he had done so with text indicating that he condemned ISIS's treatment of homosexuals.  These allegations support an inference that but for Defendants' publishing of the meme with the false text, Marlak would not have suffered any injury to his reputation.

Defendants CAIR CT and Memon also argue that the plaintiff's claims must be dismissed on absolute immunity grounds.[15]  *See* ECF No. 30-1 at 23-26.  According to the CAIR Defendants, "[t]he letter and the video constitute statements made in the course of a Department of Correction investigation into misconduct by a correctional officer," which they argue was a "quasi-judicial" proceeding and which thus cloaks the statements with absolute immunity.  ECF No. 30-1 at 24-25.  "[L]ike the privilege which is generally applied to pertinent statements made in formal judicial proceedings, an absolute privilege also attaches to relevant statements made during administrative proceedings which are 'quasijudicial' in nature…Once it is determined that a proceeding is quasijudicial in nature, the absolute privilege that is granted to statements made in furtherance of [the administrative proceeding] extends to every step of the proceeding until final disposition."  *Kelley v. Bonney*, 221 Conn. 549, 565–66 (1992) (internal citations and quotation marks omitted).

The Connecticut Supreme Court has articulated several factors to assist in deciding whether the privilege for statements made in quasi-judicial proceedings applies, including: "whether the body [conducting the proceeding] has the power to: (1) exercise judgment and discretion; (2) hear and determine or…ascertain facts and decide; (3) make binding orders and judgments; (4) affect the personal or property rights of private persons; (5) examine witnesses

---

[15] "Privilege is an affirmative defense in a defamation action…."  *Miles v. Perry*, 11 Conn. App. 584, 594 n.8 (1987) (citing *Monczport v. Csongradi*, 102 Conn. 448, 450–51 (1925)).  As previously stated, unless the relevant facts are apparent from the face of the Complaint, "[o]rdinarily, a defendant may not raise affirmative defenses in a pre-answer motion to dismiss…."  *Edwards v. McMillen Cap., LLC*, 574 F. Supp. 3d 52, 66 (D. Conn. 2021), *aff'd*, 2022 WL 16984534 (2d Cir. 2022).

and hear the litigation of the issues on a hearing; and (6) enforce decisions or impose penalties." *Id*. at 567.  Citing a case discussing the Department of Correction's "affirmative investigation procedure…governed by the [D]epartment's administrative directive 2.1," *Morgan v. Bubar*, 115 Conn. App. 603, 616 (2009), the CAIR Defendants contend that the DOC's investigation following the submission of their letter involved fact-finding, the preparation of a report, and a determination of whether the conduct at issue violated DOC policy.  *See* ECF No. 30-1 at 25.

The lengthy list of factors set forth in *Kelley* and reproduced above, however, suggests it is necessary to engage in some factual inquiry – which is not the function of a motion to dismiss – before deciding whether a particular administrative proceeding may serve as a basis for the privilege.  In any event, even assuming that the DOC's investigation into the complained-of conduct may properly be considered a quasi-judicial proceeding, the complaint does not suggest that the YouTube video could fairly be considered a "statement[] made within the context of that investigation."  *Morgan*, 115 Conn. App. at 617.  The posting of a YouTube video cannot reasonably be considered the submission of a complaint to the DOC.  *See Kelley*, 221 Conn. at 576 (recognizing that "[p]ublication to the media is ordinarily not privileged because…[t]he salutary policy of allowing freedom of communication in judicial proceedings does not warrant or countenance the dissemination and distribution of defamatory accusations outside of the judicial proceeding...") (internal quotation marks omitted).  According to the allegations in the complaint, Memon and CAIR CT published on YouTube the "Islamic Wind Chimes" meme in the "DOC Islamophobia" video, "falsely attribut[ed] the meme to the plaintiff, call[ed] him a bigot and an Islamophobe, and contact[ed] media outlets to facilitate publication of their defamatory statement" by directing them to the video.  *Id.* at 37-38.  The Defendants cite no authority suggesting that such conduct can be considered as part of a quasi-judicial proceeding

such that it is entitled to absolute immunity.  For these reasons, I decline to dismiss Count Seven

on the basis of this asserted privilege.

## H.     Count Eight: Fraud

Count Eight of the Second Amended Complaint raises claims of fraud, deceit, and

misrepresentation against Defendants Fahd Syed, Fawaz Syed, CAIR CT, and Farhan Memon.

ECF No. 47 at ¶¶ 145-150.  Marlak alleges that the Defendants, "h[olding] themselves out as

being situated so that the [D]epartment of [C]orrection and Commissioner Quiros, [his]

employers, could reasonably rely upon their representations of fact," *id.* at ¶ 148, "made material

representations of fact that [he] violated the rules and regulations of the [D]epartment of

[C]orrection," *id.* at ¶ 146, and that such representations were made with knowledge of their

falsity and "with the intent to induce the [D]epartment of [C]orrection and Commissioner Quiros

to rely on such representations," *id.* at ¶ 148.

"In Connecticut, the essential elements of common-law fraud are: '(1) a false

representation was made as a statement of fact; (2) it was untrue and known to be untrue by the

party making it; (3) it was made to induce the other party to act upon it; and (4) the other party

did so act upon that false representation to his injury.... Under a fraud claim of this type, the

party to whom the false representation was made claims to have relied on that representation and

to have suffered harm as a result of the reliance.'"  *Meyers v. PNC Fin. Servs. Grp., Inc.*, 2020

WL 7645436, at *10 (D. Conn. Dec. 23, 2020) (quoting *Sturm v. Harb Dev., LLC*, 298 Conn.

124, 142 (2010)).  In federal court, a plaintiff alleging fraud must plead such a claim with

particularity.  Fed. R. Civ. P. 9(b).  "To satisfy this rule, a plaintiff must allege 'the time, place,

speaker, and sometimes even the content of the alleged misrepresentations.'"  *Meyers*, 2020 WL

7645436, at *11 (quoting *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986)).

Defendants assert that Marlak's allegations as to his fraud claims are too conclusory to satisfy the requirement of Fed. R. Civ. P. 9 to plead fraud with particularity.  *See, e.g.*, ECF No. 28-1 at 25 (DOC Defendants); ECF No. 30-1 at 29-30 (CAIR Defendants).[16]  But I find that the allegations in the Second Amended Complaint are sufficiently specific and allege each of the elements of fraud.  In support of the first element, Marlak identifies with sufficient specificity the communications he alleges were fraudulent: (1) the YouTube video in which Memon attributed the "Islamic Wind Chimes" meme to Marlak, *see* Second Am. Compl. at ¶¶ 94-96, 98; (2) the January 8, 2021 letter from CAIR CT and Memon to Commissioner Quiros making similar representations, *id.* at ¶ 140; (3) Fahd Syed's June 17, 2019 complaint regarding the "Islamic Wind Chimes" meme, *id.* at ¶¶ 75, 76; and (4) Fawaz Syed's 2019 Facebook post publishing the "Islamic Wind Chimes" meme and attributing it to Marlak, *id.* at ¶¶ 82,136.  As for the second element, the Second Amended Complaint alleges at several points that "the plaintiff did not post the 'Islamic Wind Chimes' meme," *id.* at ¶ 137; *see also id.* at ¶¶ 141, 143, and that the defendants knowingly and falsely attributed the meme to him, *see, e.g., id.* at ¶¶ 93, 96.  Finally, as to the third and fourth elements, the complaint alleges in sufficient detail that the Defendants' statements explicitly called for Marlak's termination and that the Department of Correction and Commissioner Quiros relied on such representations to Marlak's detriment, ultimately terminating him from his employment.  Defendants do not dispute that these allegations, as stated, support the third and fourth elements of a fraud claim. [17]  I therefore find that the Second

---

[16] The CAIR Defendants also argue that Marlak has failed to state a claim for fraud because Marlak's allegation that CAIR CT and Memon stated that Marlak had violated DOC policy concerns a statement of opinion rather than a statement of fact.  *See* ECF No. 30-1 at 30.  As discussed below, however, the allegedly false statement of fact is not that Marlak violated DOC policy, but, rather, that he created and posted the "Islamic Wind Chimes" meme.

[17] I note that the Defendants have not suggested that Marlak cannot raise a fraud claim because his theory is that the DOC, rather than Marlak, was induced to rely on the statements and that the DOC acted on the statements to Marlak's detriment, rather than the DOC's detriment.  The CAIR Defendants – the only defendants to address the substance of Marlak's fraud claims – argue only that Marlak "does not allege any facts to support the conclusory

Amended Complaint has adequately pleaded fraud.  Accordingly, the motions to dismiss this Count are denied.

## I.      Count Nine: Intentional Infliction of Emotional Distress ("IIED")

Count Nine of the Second Amended Complaint alleges that defendants Fahd Syed, Fawaz Syed, Belica, CAIR CT, and Memon are liable to Marlak for intentional infliction of emotional distress.  *See* Second Am. Compl. at ¶¶ 151-153.  To state a claim for intentional infliction of emotional distress under Connecticut law, a plaintiff must plausibly allege four elements: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe."  *Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 210 (2000) (internal quotation marks omitted).

Courts in this District have repeatedly recognized that "[t]here is a 'high threshold' for extreme and outrageous conduct in Connecticut law."  *Turner v. Connecticut Lottery Corp.*, 2021 WL 4133757, at *14 (D. Conn. 2021) (quoting *Perez-Dickson v. City of Bridgeport*, 304 Conn. 483, 527 (2012)).  The Connecticut Supreme Court has defined "extreme and outrageous" conduct as follows:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt

---

allegation that the Department of Correction actually relied on CAIR and Mr. Memon's representation that the Plaintiff violated departmental policy, as opposed to conducting an independent investigation and reaching its own conclusion on the issue." ECF No. 30-1 at 30.  As to that argument, the sequence of events alleged in the complaint – and specifically, the temporal proximity between CAIR and Memon's statements and the DOC's placement of the plaintiff on administrative leave, followed by his termination – is enough to defeat the argument at the pleadings stage.

feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress."

*Appleton*, 254 Conn. at 210–11.  Furthermore, "[w]hether a defendant's conduct rises to the level of being 'extreme and outrageous' is a question to be determined by the court in the first instance.  It is only when reasonable minds disagree that it becomes an issue for the jury."  *Abate v. Cir.-Wise, Inc.*, 130 F. Supp. 2d 341, 348 (D. Conn. 2001) (internal citations omitted).

The CAIR Defendants argue that "there are no allegations directed at CAIR or Mr. Memon that come close to rising to the level of extreme and outrageous conduct" because Marlak has failed to plead with specificity "what conduct [of those defendants] he believes rises to that level."  ECF No. 30-1 at 32.  I disagree.  As discussed in the previous section, Marlak alleges that Memon and CAIR CT published a YouTube video attributing the "Islamic Wind Chimes" meme to Marlak and encouraging the public to contact Commissioner Quiros to demand his termination.  In other words, Marlak alleges that these defendants both widely publicized false, defamatory statements about him and used these false statements, together with public outcry that the defendants fomented, to pressure the DOC to terminate his employment. At this stage in the proceedings, I find that this is sufficient to establish that "the challenged actions were done in a manner that was so egregious or oppressive as to rise to the level of extreme and outrageous conduct."  *Franco v. Yale Univ.*, 161 F. Supp. 2d 133, 142 (D. Conn. 2001).  Defendant Fahd Syed's conduct alleged in the complaint—that he created a false Facebook post, falsely attributed it to Marlak, and filed a complaint with the DOC regarding the post in the same manner CAIR CT did, presumably to get him fired, *see* Second Am. Compl. at ¶¶ 76, 136—is likewise sufficient to satisfy the "extreme and outrageous" requirement.

As for Defendants Fawaz Syed and Belica, however, their alleged conduct does not rise to the level of "extreme and outrageous."  Marlak alleges that Defendant Belica commented on

Facebook that he "look[ed] forward to meeting" Marlak and made other unspecified threats against him, *id.* at ¶ 88, 138, and that Defendant Fawaz Syed "intentionally slammed the door upon [Marlak] in a manner intended to strike him," *id.* at ¶ 89.  These actions do not amount to more than rude and somewhat aggressive behavior.  I therefore dismiss Marlak's IIED claim as to Fawaz Syed and Belica.

To state a claim for IIED, Marlak must also sufficiently allege that the emotional distress he suffered as a result of this conduct was severe.  "Connecticut courts have held that emotional distress is severe where it reaches a level which 'no reasonable person could be expected to endure.'"  *Almonte v. Coca-Cola Bottling Co. of N.Y.*, 959 F. Supp. 569, 575 (D. Conn. 1997) (quoting *Mellaly v. Eastman Kodak*, 42 Conn.Supp. 17, 597 A.2d 846, 848 (1991)); *see also Craig v. Yale Univ. Sch. of Med.*, 838 F. Supp. 2d 4, 12 (D. Conn. 2011).  Marlak alleges that he "became physically distraught and sustained shock to his nervous system and suffered severe emotional distress..." as a result of Defendants' actions.  *Id.* at ¶ 153.  Although this is somewhat conclusory, I find it sufficient to allege severe emotional distress.  Therefore, I deny Defendants Fahd Syed's, CAIR CT's, and Memon's motions to dismiss Count Nine.

## V.    CONCLUSION

For the foregoing reasons, the Defendants' motions to dismiss Marlak's Second Amended Complaint [ECF Nos. 49, 50] are GRANTED as to Marlak's Conn. Gen. Stat. § 31-51q claim and conspiracy to violate Conn. Gen. Stat. § 31-51q claim asserted against the individual Defendants (Count One), his equal protection claim for money damages under 42 U.S.C. § 1983 against Defendants DOC and Quiros (Count Two), his Title VII discrimination and retaliation claim (Count Three), his 42 U.S.C. § 1985(3) claim (Count Four), his ADA retaliation and failure to accommodate claim (Count Five), his conspiracy to commit civil assault and aiding and abetting civil assault claims (Count Six), and his IIED claim against Defendants

Fahd Syed and Belica (Count Nine).  These claims are dismissed with prejudice.  The Defendants' motions to dismiss are DENIED as to Marlak's § 31-51q claim against Defendant DOC (Count One), his equal protection claim for prospective relief asserted against Defendant Quiros in his official capacity under 42 U.S.C. § 1983 (Count Two), his civil assault claim against Defendant Fawaz Syed (Count Six), his defamation claim against Defendants CAIR CT and Farhan Memon (Count Seven), his fraud claim against Defendants Fahd Syed, Fawaz Syed, CAIR CT, and Farhan Memon (Count Eight), and his IIED claim against Defendants Fahd Syed, CAIR CT, and Memon (Count Nine).

IT IS SO ORDERED.

_____
        /s/
Michael P. Shea, U.S.D.J.

Dated:          Hartford, Connecticut
                February 2, 2023